UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-1480
(CA-96-1379)

National Coalition for Students with Disabil-
ities Education and Legal Defense Fund,

Plaintiff - Appellant,

versus

James S. Gilmore, III, etc., et al,

Defendants - Appellees.

O R D E R

The court amends its opinion filed July 24, 1998, as follows:

On the cover sheet, section 2 -- the appellees are corrected
to read:

> JAMES S. GILMORE, III, acting in his official capacity as
> Governor of Virginia; WILLIAM A. ALLEN, acting in his
> official capacity as Director of the State Council on
> Higher Education; CAMERON P. QUINN, acting in her offi-
> cial capacity as Secretary of the State Board of
> Elections.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL COALITION FOR STUDENTS
WITH DISABILITIES EDUCATION AND
LEGAL DEFENSE FUND,
<u>Plaintiff-Appellant,</u>

v.

JAMES S. GILMORE, III, acting in his official
capacity as Governor of Virginia;

WILLIAM A. ALLEN, acting in his
official capacity as Director of the
State Council on Higher Education;
CAMERON P. QUINN, acting in her
official capacity as Secretary of the
State Board of Elections,
<u>Defendants-Appellees.</u>

No. 97-1480

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-96-1379)

Argued: October 27, 1997

Decided: July 24, 1998

Before RUSSELL,* MICHAEL, and MOTZ, Circuit Judges.
_____

*Judge Russell participated in the decision of this case but died before
the opinion was issued. The opinion is filed by a quorum of the panel
pursuant to 28 U.S.C. § 46(d).

Reversed and remanded by published opinion. Judge Michael wrote the opinion, in which Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Michael Jackson Beattie, NATIONAL COALITION FOR STUDENTS WITH DISABILITIES EDUCATION AND LEGAL DEFENSE FUND, Fairfax, Virginia, for Appellant. Alice Ann Berkebile, Assistant Attorney General, Richmond, Virginia, for Appellees. **ON BRIEF:** Richard Cullen, Attorney General of Virginia, Richmond, Virginia, for Appellees.

_____

**OPINION**

MICHAEL, Circuit Judge:

The National Voter Registration Act (NVRA), 42 U.S.C. § 1973gg-5(a)(2)(B), requires states to designate as voter registration agencies "all offices . . . that provide State-funded programs primarily engaged in providing services to persons with disabilities." The National Coalition for Students with Disabilities Education and Legal Defense Fund (NCSD) brought this action against several Commonwealth of Virginia officials (collectively, Virginia or the Commonwealth) to force the Commonwealth to designate as voter registration agencies the offices providing services to disabled students at Virginia's public colleges and universities.[1] The district court granted summary judgment for Virginia, holding that the NVRA does not apply to colleges. We reverse because offices providing services to disabled students at public colleges are "offices" under § 1973gg-5(a)(2)(B). As a result, we remand for the award of partial summary judgment to NCSD with respect to particular offices at the University of Virginia (UVA) and Virginia Polytechnic Institute (Virginia Tech) that must be designated as voter registration agencies. Further proceedings with respect to other public colleges will also be necessary on remand.

_____

[1] After this we will use "colleges" for colleges and universities.

2

I.

A.

Congress passed the NVRA -- dubbed the "Motor Voter Law" -- to encourage increased voter registration for elections involving federal offices. See 42 U.S.C. § 1973gg(b)(1). The Act adopts procedures designed to make it easier to register to vote, and it requires the states to put these procedures into place. Specifically, states must (1) include a voter registration application as part of the application or renewal form for a motor vehicle driver's license, (2) allow mail application for voter registration, and (3) designate various offices as "voter registration agencies" where application for registration may be made in person. See id. §§ 1973gg-2, -5(a).

This case involves aspects of the third requirement. Under this requirement each state must designate the following offices as voter registration agencies: (1) "all offices in the State that provide public assistance" and (2) "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." Id. § 1973gg-5(a)(2)(A)-(B). A state must also designate other offices, but it has latitude in deciding exactly which ones. The Act suggests that government offices such as public schools and libraries, marriage license bureaus in clerks' offices, fishing and hunting license bureaus, and revenue offices may be included in the discretionary designation. See id. § 1973gg-5(a)(3)(B).

It goes without saying that the offices designated as voter registration agencies under the NVRA were originally created to provide service or assistance wholly apart from voter registration. The Act requires a designated office to provide certain voter registration services to persons who request the service or assistance customarily provided by that office. These voter registration services include distribution of voter registration application forms and another form that includes, among other things, the question, "[i]f you are not registered to vote where you live now, would you like to apply to register to vote here today?" See id. § 1973gg-5(a)(6)(A)-(B). Offices designated as voter registration agencies must also offer to assist applicants in completing voter registration forms and accept completed forms for

3

transmittal to the appropriate state election official. See id. § 1973gg-5(a)(4)(A).

B.

NCSD is an organization headquartered in Fairfax, Virginia, whose general purpose is to advance the educational opportunities and rights of students with disabilities. NCSD is currently working to encourage college students with disabilities to register to vote. Many disabled students do not drive or otherwise have difficulty traveling. In addition, many of these students need assistance in completing voter registration forms because of blindness or motor or muscular dysfunction. Thus, NCSD alleges that a voter registration site on college campuses would permit many more disabled students to register. And, NCSD contends that the NVRA requires states to designate disability services offices at state-funded colleges as voter registration agencies.

On July 10, 1996, a visually impaired member of NCSD went to the campus of George Mason University in Fairfax, Virginia, to "look[ ] into acceptance to" that school. Among the offices she visited at George Mason was the Office of Disability Support Services, where she asked what assistance that office provided to students with disabilities. In response to a specific question about voter registration, she was told that the office did not provide voter registration services.

On July 17, 1996, NCSD sent a written complaint to the Virginia State Board of Elections, alleging that the Commonwealth was in violation of the NVRA by failing to provide voter registration services in disabled student services offices in public colleges.**2** After the Board took no action on this complaint, NCSD sued the Commonwealth in the Eastern District of Virginia, asserting an NVRA claim as well as claims under the Americans with Disabilities Act (ADA) and several provisions of the United States Constitution. NCSD sought, among other relief, a declaration that Virginia was in violation of the NVRA and an injunction requiring the Commonwealth to pro-

_____

**2** Before suing for declaratory or injunctive relief under the Act, a person must (in most cases) give the state's chief election official prior written notice of the alleged violation. See 42 U.S.C. § 1973gg-9(b).

4

vide voter registration services in college offices providing services to students with disabilities.

In the course of discovery and motion practice in this case Virginia provided undisputed facts about how the Commonwealth's institutions of higher education provide services to students with disabilities. To begin with, every public college in Virginia has an "office, section or department" that provides services for disabled students. These offices provide assistance "geared toward ensuring that qualified students with disabilities are receiving adequate access to the educational programs and activities" at their schools. None of these offices, however, provides voter registration services.

More specific information was provided about three public colleges, George Mason University, UVA, and Virginia Tech. George Mason has a Disability Support Services Office (DSS) which is the only office at George Mason that offers services"specifically directed to students with disabilities." Operation of the DSS office at George Mason is funded by student activity fees. At UVA disabled student services are provided through the Office of the Vice President of Student Affairs. At Virginia Tech these services are provided by the Office of the Dean of Students. UVA and Virginia Tech fund these offices from appropriations made by the General Assembly for "Higher Education Student Services."[3]

Virginia moved for summary judgment on November 25, 1996, and NCSD cross-moved for partial summary judgment on January 13, 1977. The Commonwealth argued that "offices" under § 1973gg-

_____

[3] A visit to the Internet reveals additional information about disabled students services available at UVA. UVA advertises a Learning Needs and Evaluation Center that provides "numerous non-medical services to students with disabilities," including education counseling. See University of Virginia, Guide to the University of Virginia for Students with Disabilities (visited June 30, 1998) http://www.uva.edu~vpsa/ada-std.html>. This center appears to operate separately from the Office of the Vice President of Student Affairs, the only UVA office the Commonwealth disclosed in this case. See id. Our decision, of course, must be based on the record developed in district court. See United States v. Russell, 971 F.2d 1098, 1112 (4th Cir. 1992).

5

5(a)(2)(B) of the NVRA are only those state <u>agencies</u> created by the legislature and funded by specific appropriation for the primary purpose of providing assistance to the disabled. Because colleges as a whole are not primarily engaged in that endeavor, they are not "offices" under the Act, according to Virginia. Finally, Virginia argued that particular college offices serving disabled students are not "offices" under the NVRA because these offices are not created by the legislature or funded by an appropriation dedicated specifically for services to disabled students.**4**

NCSD based its cross-motion on three main grounds. First, it pointed out that it was not contending that entire colleges should be designated as voter registration agencies. Rather, it said that disability services offices in colleges were "offices" under the Act. These smaller offices had to be designated as voter registration agencies, according to NCSD, because they were offering "programs primarily engaged in providing services" to disabled students. Second, it argued that the ADA requires colleges to provide convenient and accessible voter registration sites for disabled students. Third, NCSD went beyond its complaint and argued that the ADA requires Virginia to provide braille and large print voter registration applications for persons who are visually impaired. This third argument was apparently based on <u>Lightbourn v. El Paso</u>, 904 F. Supp. 1429, 1433-34 (W.D. Tex. 1995) (holding that Texas Secretary of State had duty to make sure local election authorities complied with ADA in providing accommodations to allow visually impaired persons to vote in secret), a decision that was reversed on appeal to the Fifth Circuit, <u>see Lightbourn v. El Paso</u>, 118 F.3d 421 (5th Cir. 1997), <u>cert. denied sub nom. Lightbourn v. Garza</u>, 118 S. Ct. 700 (1998).

The district court granted Virginia's motion for summary judgment and denied NCSD's cross-motion. In addressing the NVRA, the court

_____

**4** A few state government departments that serve the disabled have been designated by Virginia as voter registration agencies. They are the Virginia Department of Rehabilitative Services, the Department for Rights of Virginians with Disabilities, the Virginia Department for the Deaf and Hard of Hearing, the Virginia Department for the Visually Handicapped, the Virginia Department of Mental Health, Mental Retardation and Substance Abuse Services, and the Virginia Department of Social Services.

held that Congress did not intend for the Act to apply to state colleges because these institutions are not primarily engaged in serving disabled persons. The court also rejected NCSD's claim that the ADA requires a voter registration site for disabled students on college campuses. Finally, the court said that NCSD did not state a claim under the Constitution. NCSD appeals the district court's ruling on its NVRA claim and also seeks to have us consider its claim that the ADA requires voter registration application forms in braille and large print. The district court did not address the braille/large print claim, presumably because the claim was not asserted in the complaint or in any motion to amend. Because the braille/large print claim was not properly raised in district court, we will not consider it here. See Krouse v. American Sterilizer Co., 126 F.3d 494, 499 n.1 (3d Cir. 1997). We move, then, to the one claim that NCSD preserved for appeal, the NVRA claim.

II.

The NVRA requires that states designate as voter registration agencies "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." 42 U.S.C. § 1973gg-5(a)(2)(B).

Virginia concedes that at each of its public colleges there is an office, section, or department that provides services to disabled students to ensure them adequate access to educational programs and other activities. Virginia also concedes that these offices at UVA and Virginia Tech are funded by a line item appropriation made by the General Assembly for "Higher Education Student Services." As a result, it cannot be disputed that the offices assisting disabled students at UVA and Virginia Tech fit a key portion of the controlling statutory language: they "provide State-funded programs primarily engaged in providing services to persons with disabilities." Id. § 1973gg-5(a)(2)(B).[5] The focus of the dispute on appeal is therefore whether the offices providing these programs at UVA and Virginia Tech are "offices" under the NVRA.

_____

[5] We cannot say whether the DSS office at George Mason meets the "State-funded" requirement. See part III, infra.

7

NCSD argues that an "office" is a subdivision of a government department or institution. This argument is based on the definition of the term "office" found in several leading dictionaries. NCSD argues that since an office providing services for disabled students in a public college is a subdivision of the college, it should be considered an "office" for purposes of the NVRA. Virginia disagrees, arguing that the term "office" refers to a government agency as a whole and not to offices that are subdivisions of an agency. Only a government agency created by state statute could be an "office" under Virginia's interpretation. Virginia's public colleges are public institutions created by statute. See generally Va. Code Ann. tit. 23. Thus, Virginia suggests that a public college as a whole would be an "office" in the NVRA sense, but an office serving the disabled within that college could not be an NVRA "office" because it is merely a subdivision of the college that is not designated by statute or specific appropriation.[6]

_____

[6] Although Virginia argues that its public colleges are "offices," the Commonwealth concludes that they do not have to be designated as voter registration agencies because a college as a whole is not primarily engaged in serving the disabled. Virginia's argument about the meaning of "office" thus proceeds on the assumption that in order to be designated as a voter registration agency under § 1973gg-5(a)(2)(B), an office (as a whole) must be primarily engaged in serving the disabled. The statutory language does not permit this assumption. Again, § 1973gg-5(a)(2)(B) designates "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." "Primarily engaged" modifies "programs" under the most natural reading of this provision. This reading is also mandated by the fundamental canon of statutory construction that a qualifying phrase refers solely to its immediate antecedent. See 2A Sutherland Statutory Construction § 47.33 (5th ed. 1992). Absent an expression of contrary congressional intent, the failure to apply this canon "flies in the face of common sense in grammar hardened into law." United States ex rel. Santarelli v. Hughes, 116 F.2d 613, 616 (3d Cir. 1940). Here, the antecedent immediately preceding "primarily engaged" is "programs." There is nothing in the statute or legislative history to suggest that"primarily engaged" does not modify "programs." Accordingly, an office may qualify as a voter registration agency if it provides programs primarily engaged in serving the disabled, even if the office as a whole is not primarily engaged in serving the disabled.

8

We conclude that § 1973gg-5(a)(2)(B), read in light of the established rules of statutory construction, requires states to designate as voter registration agencies those state-funded offices that provide services to disabled students at public colleges.

A.

Courts must apply the plain language of a statute except in the rare circumstance when there is a clearly expressed legislative intent to the contrary or when a literal application would frustrate the statute's purpose or lead to an absurd result. See In re Vial, 115 F.3d 1192, 1196 (4th Cir. 1997) (en banc). "In interpreting statutory language, words are generally given their common and ordinary meaning." Alexander S. v. Boyd, 113 F.3d 1373, 1383 (4th Cir. 1997) (citation omitted); see also Smith v. United States, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning"). We decide whether particular statutory language is plain by considering "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 117 S. Ct. 843, 846 (1997) (citations omitted); accord United States v. Wildes, 120 F.3d 468, 469-70 (4th Cir. 1997), cert. denied sub nom. Cameron v. United States, 118 S. Ct. 885 (1998).

1.

We begin with the language itself, that is, the term "offices" in § 1973gg-5(a)(2)(B), which specifies "all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." (Emphasis added.) We customarily turn to dictionaries for help in determining whether a word in a statute has a plain or common meaning. See, e.g., United States v. Harris, 128 F.3d 850, 854 (4th Cir. 1997) (using Black's Law Dictionary to determine plain meaning of "similar"); In re A.H. Robins Co., 109 F.3d 965, 967-68 (4th Cir. 1997) (using Webster's Dictionary for "therefore").

Webster's defines the term "office" in a governmental context as "a subdivision of a governmental department." See Webster's II New Riverside University Dictionary 816 (1988). Other dictionaries are in

9

accord with this definition of "office." See, e.g., Webster's III New International Dictionary 1567 (1981) ("a branch or subdivision of governmental administration that ranks (in the national government) below the department"); Random House Dictionary of the English Language 1844 (2d ed. 1987) ("an operating agency or division of certain departments of the U.S. Government: Office of Community Services"); cf. Black's Law Dictionary 1083 (6th ed. 1990) ("[a] place for the regular transaction of business or performance of a particular service"). This definition means that an office within a government department is a "subdivision" of that department. From this, NCSD persuasively argues that a public college created by the state is a state department or institution. A public college is therefore not an "office" under the NVRA because as a stand-alone department or institution, it could not be a "subdivision" of itself. NCSD concludes its application of the definition by arguing that a college office serving the disabled is a "subdivision" of the college and, hence, an "office" under the Act.

By contrast, Virginia argues that the term "office" in § 1973gg-5 means only a government department as a whole that is created directly by the state legislature; constituent subdivisions of a department do not count. Under Virginia's interpretation public colleges are themselves the "offices" referred to in the section. Virginia provides no textual support for this interpretation, however. In fact, the only support for Virginia's argument comes not from American but from British usage of the term "office." See, e.g., Random House, supra, at 1844 ("Brit. a major administrative unit or department of the national government: the Foreign Office." (emphasis in original)); Webster's III, supra, at 1567 ("Brit: a principal branch or division of governmental administration: DEPARTMENT" (emphasis in original)). Were we interpreting a statute of British origin, this definition might be sufficient to create an ambiguity of meaning.

In this case, however, we are interpreting a statute enacted by the United States Congress, with the constituent states of the Union as the intended audience. The fact that an alternative definition exists in the English language is not enough to create ambiguity."[T]he plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intel-

10

lect would discover." <u>Lynch v. Alworth-Stephens Co.</u>, 267 U.S. 364, 370 (1925) (Sutherland, J.) (quotations omitted). We believe that when the alternative definition of a term derives chiefly from usage outside the United States, the foreign usage will not blur an otherwise plain meaning of the term in one of our statutes, unless there is clear evidence that Congress intended to adopt the foreign definition. <u>Cf. MCI Telecommunications Corp. v. American Tel. & Tele. Co.</u>, 512 U.S. 218, 228 & n.3 (1995) (rejecting aberrant definition of "modify" when weight of common American usage dictates otherwise). There is no evidence that Congress intended to use "office" in the NVRA in the British (department of government) sense.

When we focus on what the term "office" means insofar as government structure is concerned, respected dictionaries tell us that in common American usage the term means a subdivision of a government department or institution. Virginia acknowledges that every one of its public colleges has "an office, section or department" providing services to disabled students. Virginia does not dispute that these offices are subdivisions of the colleges. Accordingly, the dictionary definition of the term "office" (a subdivision of a government department) supports the proposition that offices providing disability services in public colleges are "offices" under the NVRA.

2.

In looking for the plain meaning of a statutory term, we also refer to the specific context (usually the subsection) in which the term is used. <u>See e.g.</u>, <u>Robinson</u>, 117 S. Ct. at 846-47; <u>Wildes</u>, 120 F.3d at 740. The context in which a term is used often determines how broadly or narrowly the term is to be defined. And, when "Congress employ[s] broad language" in drafting a statute, we "are not free to disregard" it. <u>Wildes</u>, 120 F.3d at 740.

The term "offices" in the provision at issue appears in the following context: "<u>all offices</u> in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities." § 1973gg-5(a)(2)(B) (emphasis added). Virginia can point to nothing in this language that can be read to construe "office" to refer to an entire government department or institution, such as a college, created directly by the legislature. Nor can Virginia claim, once specific con-

11

text is taken into account, that college offices providing programs for the disabled are not "offices" under the provision. Indeed, the use of the word "all" to modify "offices" suggests an expansive meaning because "all" is a term of great breadth. See Wildes, 120 F.2d at 740. The addition of the broad, inclusive word "all" in the specific context (§ 1973gg-5(a)(2)(B)) in which the term "offices" is used also supports the conclusion that an office providing programs for the disabled in a public college is an "office" under the Act.

3.

Next, we must consider what "offices" means in the context of the statute as a whole. See Robinson, 117 S. Ct. at 846-47; Wildes, 120 F.3d at 740. The word "offices" is used in other provisions, § 1973gg-5(a)(2)(A) & (3)(B), which are interrelated with and in close proximity to § 1973gg-5(a)(2)(B), the provision we are studying today. We thus have the "classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning." See Commissioner v. Lundy, 516 U.S. 235, 250 (1996)(citations and internal quotations omitted).

To provide adequate voter registration opportunities to citizens who may not apply for or renew driver's licenses, Congress requires states to designate a number of "offices" as voter registration offices. See generally § 1973gg-5. A state must designate "all offices" that provide public assistance, see id. § 1973gg-5(a)(2)(A), and "all offices" "that provide State-funded programs primarily engaged" in serving the disabled, id. § 1973gg-5(a)(2)(B). In addition to these specific offices that must be designated as voter registration agencies, a state must also designate "other offices," see id. § 1973gg-5(a)(3)(A). Although a state has discretion in choosing the additional offices for designation, paragraph (3)(B) lists offices that may be included in the discretionary designation. See id. § 1973gg-5(a)(3)(B). Thus, paragraph (3)(B), like paragraphs (2)(A) and (2)(B) just above it, describes "offices" that are suitable, in Congress's judgment, as voter registration agencies.

Among the "offices" suggested in paragraph (3)(B) for designation are "public libraries, public schools, offices of city and county clerks

12

(including marriage license bureaus), fishing and hunting license bureaus, government revenue offices, [and] unemployment compensation offices." Id. § 1973gg-5(3)(B). Congress is not describing overall government departments here; it is describing subdivisions of departments. Thus, a marriage license bureau is a subdivision of a clerk's office, a hunting license bureau is a subdivision of a state game and wildlife department, a revenue office is a subdivision of a state tax department, an unemployment compensation office is a subdivision of a state department of employment security, and so on. Congress's focus in paragraph (3)(B) is on the small offices or locations where citizens conduct their daily business with government. Because of the high volume of citizen traffic in these offices, they are ideal as voter registration agencies.

Virginia argues that in paragraph (2)(B), relating to "offices" serving the disabled, Congress used "offices" to mean overall governmental departments. Thus, according to Virginia, "offices" providing "programs primarily engaged in providing services" to the disabled would only include the half-dozen major state departments serving the disabled, such as the Virginia Department of Rehabilitative Services. However, when paragraph (2)(B) is read in context with paragraphs (2)(A) (offices providing public assistance) and (3)(B) (various local offices), it appears that Congress in all three places used "offices" in the same (smaller) sense. In other words, Congress wanted to make voter registration services available in community-based offices that citizens visit frequently for services or assistance. This purpose applies especially to the disabled, many of whom do not drive or have difficulty in traveling.

When we consider what the word "office" means in the broader context of the NVRA as a whole, it does not stand for a government department but it is a subdivision of a department where citizens regularly go for service and assistance. Under this meaning, a college office serving disabled students would be an "office" under the specific paragraph, § 1973gg-5(a)(2)(B), we are considering.

B.

We have just said that the plain meaning of the term"offices" in § 1973gg-5(a)(2)(B) includes an office providing services to disabled

13

students in a public college. This plain meaning cannot be circumvented unless we have the rare instance when there is a clearly expressed congressional intent to the contrary or when a literal application of the plain language would frustrate the statute's purpose or lead to an absurd result. <u>See In re Vial</u>, 115 F.3d 1192, 1196 (4th Cir. 1997) (en banc). Virginia does not argue that use of the plain meaning of "offices" would frustrate the purposes of the NVRA or lead to an absurd result. However, Virginia did cite legislative history to the district court to argue that Congress did not intend for the NVRA to reach state-supported colleges.

The district court held that the language of § 1973gg-5(a)(2)(B) does not apply to state colleges because they are not primarily engaged in serving the disabled. The court then adopted Virginia's legislative history argument to bolster this holding. The court cited a paragraph from the legislative history indicating that the Act's coverage includes agencies providing "education counseling" to the disabled. From this, the court said that Congress "intended that the act apply to state institutions providing `education <u>counseling</u>' and not to those agencies [that is, colleges] providing educational <u>services</u>." <u>National Coalition For Students with Disabilities Educ. and Legal Defense Fund v. Allen</u>, 961 F. Supp. 129, 131 (E.D. Va. 1997) (emphasis added).**7** The district court added that state colleges are not mentioned in the legislative history. <u>See id.</u>

This is an inappropriate use of legislative history. Because the plain meaning of "offices" includes an office in a college serving the disabled, the NVRA's legislative history is irrelevant unless it proves that this meaning of the statutory term violates congressional intent. We have read the legislative history, and nothing in it reveals that using the plain meaning of "offices" would violate congressional intent.

_____

**7** The undisputed facts in this case do not support the district court's reliance on legislative history. By Virginia's own admission it appears that public college offices serving disabled students provide "education counseling" to those students. According to the legislative history, therefore, these particular college offices would be covered by the Act.

14

We backtrack for a moment to the opening language of the NVRA, which makes its purpose clear: "to establish procedures that will increase the number of eligible citizens who register to vote." § 1973gg(b)(1). The centerpiece of the Act is the motor voter section, providing for the simultaneous application for a driver's license and voter registration. See id. § 1973gg-3. But Congress recognized that many citizens do not drive. To accommodate the non-drivers among us and to provide greater opportunity for registration in general, Congress requires states to designate a number of offices -- offices that are not part of state motor vehicle departments -- as voter registration agencies. Nothing in the legislative history suggests that state college offices serving the disabled are not "offices" to be designated as voter registration agencies.

According to the House Report, the office designation section of the Act is designed to "supplement the motor-voter provisions of the bill by reaching out to those citizens who are likely not to benefit from the State motor-voter application provisions." H.R. Rep. No. 103-9, at 12 (1993), reprinted in 1993 U.S.C.C.A.N. 105, 116. Offices serving the disabled and recipients of public assistance were identified as the offices "most likely to serve the person of voting age who may not have driver licenses." Id. By requiring states to designate these offices as voter registration agencies, "we will be assured that almost all of our citizens will come into contact with an office at which they may apply to register to vote with the same convenience as will be available to most other people under the motor voter program of this Act." H.R. Conf. Rep. No. 103-66, at 19 (1993), reprinted in 1993 U.S.C.C.A.N. 140, 144; see also id. ("If a State does not include . . . public assistance [offices and] agencies serving persons with disabilities . . . it will exclude a segment of its population from those for whom registration will be convenient and readily available -- the poor and persons with disabilities who do not have driver's licenses and will not come into contact with the other principle [sic] place to register under this Act").

The above passages from the legislative history are representative. Congress did not in any way express an intent to exclude offices serving the disabled in public colleges from the term "offices" in § 1973gg-5(a)(2)(B) of the NVRA.

15

C.

In sum, the dictionary defines "office" as a subdivision of a government department or institution. The specific context in which the term "office" is used in § 1973gg-5(a)(2)(B) and the use of the term elsewhere in the Act reinforce this dictionary definition. Nothing in the legislative history reveals that Congress intended for a different definition to apply. Accordingly, we hold that the plain meaning of the term "offices" in § 1973gg-5(a)(2)(B) includes an office providing services to disabled students at a public college. Such an office, as a subdivision of the college, fits the plain meaning of "office."[8]

_____

[8] Virginia has indicated that under this interpretation an office that provides programs primarily serving the disabled could be designated as a voter registration agency even though the office also provides other programs not aimed at serving the disabled. See n.6, supra. The Commonwealth has in mind the Office of the Vice President of Student Affairs at UVA and the Office of the Dean of Students at Virginia Tech. However, the fact that such an office is designated as a voter registration agency does not mean that it must provide voter registration services to all patrons, including those without disabilities. Rather, only those persons seeking the benefits of the programs primarily serving the disabled would be entitled to voter registration services.

It is true that the NVRA states that "[a] voter registration agency that is an office that provides service or assistance in addition to voter registration shall . . . distribute [the voter registration application forms, etc.] with each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance." § 1973gg-5(a)(6). Read literally, this could require a multipurpose office, designated as a voter registration agency because its functions include offering programs primarily serving the disabled, to offer voter registration services to all patrons, disabled and non-disabled alike. This would be an absurd result, however, given the NVRA's carefully structured program to promote registration.

A study showed that about 90 percent of the population 18 years and older had driver's licenses, so Congress believed that a vast majority of citizens would have improved access to voter registration through the motor voter provision. See H.R. Rep. No. 103-9, at 4-5 (1993), reprinted in 1993 U.S.C.C.A.N. 105, 108-09. Recognizing that many disabled persons do not drive and would therefore miss the opportunity to register under the motor voter program, Congress added § 1973gg-5(2)(B)

16

III.

Our final piece of business is the disposition required in light of our analysis. Because we have held that the term "offices" in 42 U.S.C. § 1973gg-5(a)(2)(B) includes public college offices with programs serving the disabled, we reverse the district court's order awarding summary judgment to Virginia.

NCSD asserts that the district court erred in denying its motion for partial summary judgment. Although an order denying summary judgment is not independently appealable, we may review such an order when it is appealed along with an order granting a cross-motion for summary judgment. See Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996). When the facts are uncontroverted, we are free to direct the entry of an order awarding summary judgment to the party whose motion was denied. See id.

It is undisputed that the Office of the Vice President of Student Affairs at UVA and the Office of the Dean of Students at Virginia Tech offer "programs primarily engaged in providing services to" disabled students. It is also undisputed that these programs are "State-funded" by the Commonwealth through the "Higher Education Student Services" appropriation made by the General Assembly. Virginia does not suggest any issue of material fact that would preclude summary judgment regarding these two institutions. See Appellee's Br. at 4 ("There [a]re no disputed issues of material fact"). Accordingly, on remand the district court is to grant partial summary judgment for NCSD, declaring that the Office of the Vice President of Student Affairs at the University of Virginia and the Office of the Dean of

_____

(requiring designation of offices with "programs primarily engaged" in serving the disabled) solely to target the disabled portion of the population. Because § 1973gg-5(2)(B) was enacted only to cover the disabled, we believe that an office designated as a voter registration agency under that section is required to provide voter registration services just to those of its patrons who are disabled. Accordingly, while an office, such as a dean of students office, that serves both disabled and non-disabled students may qualify for designation under § 1973gg-5(2)(B), only the disabled will be entitled to voter registration services.

17

Students at Virginia Polytechnic Institute qualify for designation as voter registration agencies under § 1973gg-5(a)(2)(B).

We are not in a position to order any relief with respect to the DSS office at George Mason University. The DSS office is an "office" for NVRA purposes because its function is to assist disabled students. It is not clear, however, whether the office is state funded because it is financed with student activity fees and not appropriated funds. Student activity fees may be considered a source of state funding if the monies generated by those fees are controlled by the college. See, e.g., Student Gov't Assoc. v. Board of Trustees of the Univ. of Mass., 868 F.2d 473, 478 (1st Cir. 1989) (holding that student activity fees collected under authority of state law and disbursed at direction of board of trustees are university funds). If, however, the fees are not subject to university control and are segregated from other university funds, they may not be considered as state funds. Cf. Schiff v. Williams, 519 F.2d 257, 262 & n.2 (5th Cir. 1975) (holding student activity fees not to be state funds when they were segregated from university funds and the state treasury); cf. also Rosenberger v. Rector and Visitors of the Univ. of Va., 515 U.S. 819, 851-52 (1995) (O'Connor, J., concurring) (noting that student activity fees administered by students and kept separate from state treasury are not government resources). Both the record and Virginia law are silent as to how student activities fees are collected, maintained, or disbursed at George Mason University. When the factual record is insufficient on a threshold question, we must remand to the district court for further proceedings. See Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 703-04 (4th Cir. 1993). On remand the district court will determine the sources, nature, and handling of funding for the programs offered by the DSS office at George Mason University.

NCSD should also be given the opportunity on remand to establish, if it can, that there are offices serving disabled students in other public colleges in Virginia that should be designated as voter registration agencies.

REVERSED AND REMANDED WITH INSTRUCTIONS

18