**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-1045**

REPUBLIC WESTERN INSURANCE COMPANY,

Plaintiff - Appellant,

versus

LATHADDEUS WILLIAMS; ELIZABETH NICHOLS;
CAROLINA CASUALTY INSURANCE COMPANY; HAROLD
NICHOLS; P.B. EXPRESS, INCORPORATED,

Defendants - Appellees,

and

MORGAN TREVATHAN & GUNN, INCORPORATED,

Defendant.

**No. 06-1046**

REPUBLIC WESTERN INSURANCE COMPANY,

Plaintiff - Appellee,

versus

ELIZABETH NICHOLS; HAROLD NICHOLS,

Defendants - Appellants,

and

LATHADDEUS WILLIAMS; CAROLINA CASUALTY
INSURANCE COMPANY; P.B. EXPRESS, INCORPORATED;
MORGAN TREVATHAN & GUNN, INCORPORATED,

                                              Defendants.

─────────────

Appeals from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, District
Judge.  (CA-04-449-2)

─────────────

Argued:  September 19, 2006        Decided:  January 10, 2007

─────────────

Before SHEDD and DUNCAN, Circuit Judges, and Richard L. VOORHEES,
United States District Judge for the Western District of North
Carolina, sitting by designation.

─────────────

Reversed by unpublished per curiam opinion.

─────────────

**ARGUED:** Richard C. Foster, HICKS, CASEY & FOSTER, P.C., Marietta,
Georgia, for Appellant/Cross-Appellee.  John Robert Murphy, MURPHY
& GRANTLAND, P.A., Columbia, South Carolina; Daniel Roy Settana,
Jr., MCKAY, CAUTHEN, SETTANA & STUBLEY, P.A., Columbia, South
Carolina, for Appellees/Cross-Appellants.  **ON BRIEF:** Weston Adams,
III, MCANGUS, GOUDELOCK & COURIE, L.L.P., Columbia, South Carolina,
for Appellant/Cross-Appellee.  Stephen L. Hall, MCKAY, CAUTHEN,
SETTANA & STUBLEY, P.A., Columbia, South Carolina, for Appellees
Carolina Casualty Insurance Company and P.B. Express, Incorporated.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lathaddeus Williams is an independent owner-operator of a 1991 Freightliner tractor ("the Freightliner"). Republic Western Insurance Company ("Republic") issued an insurance policy to Williams providing coverage for his vehicles that are not used for commercial purposes. Carolina Casualty Insurance Company ("Carolina") issued an insurance policy to P.B. Express, Inc. ("PBX"), which leased the Freightliner from Williams. The Carolina policy provided PBX coverage for the company's vehicles used in commercial transportation. After a vehicle accident involving Williams (who was then driving the Freightliner) and Elizabeth Nichols, Williams filed a tort action against Nichols in state court, and she filed a counterclaim against him. Republic thereafter filed this declaratory judgment action against Williams, Nichols, Carolina, and PBX seeking a determination of the parties' respective rights and obligations arising from the state-court litigation.[1]

On cross-motions for summary judgment, the district court originally granted summary judgment in favor of Republic and against Carolina. However, on motion for reconsideration, the district court reversed its prior ruling and granted summary

---

[1]In its amended complaint, Republic also named Harold Nichols and Morgan Trevathan & Gunn, Inc. ("MTG") as defendants. Although Harold Nichols is a party to this appeal, MTG is not. For our purposes, Harold Nichols' interest is identical to Elizabeth Nichols' interest.

judgment in favor of Carolina, holding <u>inter alia</u> that Williams is covered under the Republic policy but not under the Carolina policy. Republic and Nichols now appeal. Because we conclude that Williams' accident is covered under the Carolina policy but not the Republic policy, we reverse the summary judgment and remand with instructions for the district court to enter judgment in a manner consistent with this opinion.

I

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We review the district court's order granting summary judgment <u>de novo</u>, viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." <u>Garofolo v. Donald B. Heslep Assocs., Inc.</u>, 405 F.3d 194, 198 (4th Cir. 2005). When faced with cross-motions for summary judgment, we review "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003). "Although an order denying summary judgment is not independently appealable, we may review such an order when it is appealed along

4

with an order granting a cross-motion for summary judgment." National Coalition for Students with Disabilities Educ. and Legal Defense Fund v. Allen, 152 F.3d 283, 293 (4th Cir. 1998).

A.

The material facts of this case are undisputed. In January 2002, Williams and PBX entered into a written agreement for services and a permanent lease of the Freightliner. The lease provided that PBX would have exclusive control of, and would assume complete responsibility for the operation of, the Freightliner when it was in use for PBX. PBX maintained a policy with Carolina to cover the company's commercial transportation, and Williams maintained a policy with Republic to cover his vehicles when in non-commercial use.

At the inception of the lease, Williams completed an employment application with PBX and a pre-employment drug screen. PBX provided Williams with placards containing the PBX logo that were affixed to the sides of the Freightliner. PBX's placards and all of its identifying numbers remained on the Freightliner throughout the lease. PBX also supplied Williams with an accident kit to be kept in the Freightliner at all times. The accident kit contained a disposable camera, a Carolina accident information form, and an insurance card indicating proof of PBX's insurance with Carolina.

Pursuant to the lease, Williams would operate the Freightliner as a local driver for PBX. Under this arrangement, Williams used the Freightliner to haul containers between the PBX terminal and three Charleston, South Carolina, shipyards. PBX typically employed four local drivers at any given time, and it required these drivers to come to its terminal and obtain their assignments personally from the city dispatcher. PBX gave its drivers one assignment at a time, and when a driver was sent to a shipyard, he had to return to the PBX terminal to get the next assignment.

Williams, like all PBX local drivers, was paid only for time spent hauling containers. Although PBX did not require Williams to arrive at the terminal at any specific time for his first assignment of each day, he normally went to the PBX terminal with the expectation that work was immediately available. PBX permitted Williams to drive the Freightliner to and from work everyday and to park it overnight in a lot on a side street about one mile from his home. PBX did not direct Williams' route between his home and the PBX terminal, and it did not direct the routes he took while hauling containers.

PBX required its local drivers to perform a pre-trip inspection before starting and driving a truck. Williams performed his daily pre-trip inspection every morning in the lot near his home where he parked the Freightliner. Williams testified that the Freightliner was "for business, not for pleasure," J.A. 272, and

6

that he only drove it for business; when he was not conducting business, he parked the truck.

B.

On April 30, 2003, Williams was driving the Freightliner from the overnight parking lot to the PBX terminal when he was involved in an accident with Elizabeth Nichols. At the time of the accident, Williams was on his way to work, expecting to receive his first assignment for the day. That morning, Williams acted in his usual course by walking to the lot near his home, performing the required pre-trip inspections, and driving to the PBX terminal, with the Carolina placards affixed to the Freightliner, to obtain his assignments for the day. Because Williams had not yet arrived at the PBX terminal, he was not hauling a container (i.e., he was "bobtailing").

Immediately following the accident, Williams gave the investigating officer his license, vehicle registration, and the Carolina insurance card contained in the PBX accident kit. Williams then called PBX as required by PBX procedures. Williams spoke to James Floyd, the PBX southeast regional manager, who advised him to get the disposable camera from the accident kit and take pictures. Floyd also advised Williams to fill out the Carolina accident information form contained in the accident kit. Shortly after Williams called PBX, Patrick Crowell of PBX prepared a "First Report of Accident" on a PBX form. In describing the

7

accident on the form, Crowell wrote that the driver was pulling onto the interstate when a lady pulled into his lane. Crowell also noted that the driver was coming from home to work.

Floyd met Williams at the hospital. Upon arriving at the hospital, Floyd secured the camera and the Carolina accident information form completed by Williams. Floyd also instructed Williams to undergo drug and alcohol testing, which Williams did. Crowell later collected the information obtained from Williams and had it sent to PBX's corporate office.

Williams' employment with PBX was terminated in January 2004, at which time a Termination Record Form was prepared. This form contained an "Accident Detail" showing that Williams was involved in one accident while with PBX, namely, the April 30, 2003, accident. The form stated that this accident was "DOT recordable." PBX acknowledged that an accident is not "DOT recordable" if the PBX driver was on his own time and in his own vehicle.

C.

Williams sued Nichols in state court alleging that her negligence caused the accident, and Nichols filed a counterclaim alleging that the accident resulted from his negligence. Upon receipt of a demand letter from Williams, Republic defended him under a reservation of rights.

Thereafter, Republic filed this declaratory judgment action in the district court against Williams, Elizabeth and Harold Nichols, Carolina, PBX, and MTG seeking a determination of the parties' respective rights and obligations arising from the state-court litigation. Subsequently, each party moved for summary judgment. Carolina and PBX argued that Republic's non-commercial policy applied because Williams was not operating the Freightliner in the "actual use of, or in the business of," PBX at the time of the accident. Conversely, Republic maintained that it was not obligated to provide coverage because Williams was operating in the business of PBX at the time of the accident, and therefore the exclusionary language of Republic's policy applied. Republic also asserted that PBX is not an insured under Republic's policy and therefore lacked standing to assert claims for coverage, defense, or bad faith against Republic.[2] Nichols asserted that both the Republic and Carolina policies provide coverage to Williams because under the Carolina policy, the Freightliner was a hired auto and Williams was using the Freightliner with PBX's permission, and under Republic's policy the business exclusion does not apply because the Freightliner was not being used in the business of PBX at the time of the accident.

---

[2]PBX had filed a counterclaim against Republic asserting that it was an insured under the Republic policy, that Republic had a duty to defend any lawsuit under the policy, and that Republic was acting in bad faith by not providing coverage or a defense.

On cross-motions for summary judgment, the district court held (1) Williams was not owed coverage under the Republic policy because of that policy's business exclusion; (2) Williams was owed coverage as a permissive user under PBX's policy with Carolina; and (3) PBX was not an insured under Republic's policy. Carolina and PBX then moved for reconsideration, which the district court granted. On reconsideration, the district court reversed its prior order and held that Williams was not acting in the business of PBX at the time of the accident and that coverage for Williams applied under Republic's policy. The district court further held that Williams was not covered under the Carolina policy because he was not a permissive user as defined by that policy. Upon reconsideration, the district court did not address whether or not PBX was an insured under the Republic policy; however, by granting summary judgment in favor of PBX, the district court effectively held that PBX was an insured under the Republic policy.


II


On appeal, Republic contends that the district court erred in holding that the business exclusion of its policy does not apply. Republic also contends that the district court erred in holding that Williams was not covered under the permissive use provisions of the Carolina policy. On cross appeal, Nichols contends that

10

both policies apply.[3]  For the reasons stated below, we agree with Republic.

A.

We first address Republic's argument that coverage for Williams is excluded under the Republic policy because Williams was acting "in the business of" PBX at the time of the accident.  The Republic policy reads in relevant part:

> No Liability Coverage is afforded when described vehicles . . . [are] used to carry property in any business or in route for such purpose.

J.A. 664.[4]  Although at the time of the accident Williams was not carrying a load and did not have a specified load to pick up, the parties do not dispute that he was on his way to the PBX terminal with the purpose of obtaining a work assignment.  As such, Williams was acting in accordance with his usual course of business, which was to drive to the PBX terminal to obtain his work assignments for the day.  We conclude that these undisputed facts establish that Williams was "in route . . . to carry property" for PBX's business at the time of the accident.  Accordingly, we hold that the

---

[3]Republic also contends that the district court abused its discretion by granting the motion for reconsideration.  We find no merit to this contention.

[4]Nichols contends that the exclusion is not part of the insurance contract because it is contained in the certificate of insurance and not in the contract.  We have reviewed this issue and find that Williams' certificate of insurance was expressly incorporated into the policy.

11

Republic policy excludes coverage for Williams regarding the underlying accident.[5]

B.

We now turn to the question of whether Williams is covered under the Carolina policy based on the permissive use provision of that policy. The Carolina policy reads in relevant part:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" . . . to which this insurance applies caused by an "accident" resulting from the ownership, maintenance, or use of a covered "auto."

J.A. 585. The Carolina policy defines "insureds" as being:

a. You for any covered "auto."
b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow.

J.A. 585. PBX is the named insured in the Carolina policy. This provision thus requires two elements in order for someone other than PBX to qualify as an additional insured: (1) use of an owned, hired, or borrowed auto; and (2) permission from PBX. Carolina

---

[5]Although the actions taken by PBX immediately following the accident do not independently establish that Williams was "in route to carry property" for PBX, the following facts provide further support for such a finding. After the accident, PBX conducted a thorough investigation. PBX acknowledged that this investigation would not have been necessary if Williams had not been either on the job, under dispatch, or acting in the business of PBX at the time of the accident. Furthermore, PBX listed the accident as DOT recordable on Williams' termination form, and it admitted that an accident is not DOT recordable if the PBX driver is on his own time and in his own vehicle. J.A. 368-69. Finally, Williams testified that the Freightliner was "for business, not for pleasure" and that he only drove the truck for business. J.A. 272.

12

does not contend that the Freightliner is not a "hired auto." Therefore, for our purposes the only question is whether Williams was using the Freightliner with permission from PBX.

Carolina contends that the permissive use provision is inapplicable because Williams operated as an independent contractor; as such, he had the right to use the Freightliner without permission from PBX. Carolina further asserts that pursuant to the lease, PBX had no authority to grant permission to Williams to operate the Freightliner at the time of the accident or at any other time the Freightliner was not in "actual use" for PBX. We disagree with Carolina.

The lease reads in relevant part:

Carrier shall have Exclusive possession, control, and use of the equipment and shall assume complete responsibility for the operation of the equipment while in actual use for the Carrier. Whenever the equipment is not in actual use for Carrier, the equipment shall bear no placard or other reference of any kind to Carrier.

J.A. 444 (emphasis added). The lease defines PBX as the "carrier" and the Freightliner as "equipment." The Department of Transportation has issued the following regulation with respect to equipment leases between motor carriers and owner/operators (such as the lease in this case):

(c) Exclusive possession and responsibilities:
(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The

13

> lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the <u>duration of the lease</u>.

49 C.F.R § 376.12(c)(1) (emphasis added).

Although the lease specifies that PBX (the lessee) will assume responsibility for the operation of the Freightliner only "while in actual use" for PBX, this regulation requires that PBX have exclusive possession and assume complete responsibility for the Freightliner "for the duration of the lease." The lease, which was in effect at the time of the underlying accident, thus fails to meet the requirements of the regulation. Because parties may not enter into a contract that violates the law,[6] PBX -- by operation of the regulation -- had exclusive possession and control of the Freightliner throughout the term of the lease. Therefore, because PBX allowed Williams to drive the Freightliner to and from work, his use of the Freightliner was necessarily permissive. Accordingly, Williams was a permissive user at the time of the accident, and coverage for Williams is provided under the Carolina policy.[7]

---

[6]Ohio law governs interpretation of the Carolina policy. "It is elementary that no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are parts of every contract." <u>Bell v. Northern Ohio Tel. Co.</u>, 78 N.E.2d 42, 43 (Ohio 1948).

[7]Like other federal trucking regulations, § 376.12(c)(1) was "intended to safeguard the public by preventing authorized carriers from circumventing applicable regulations by leasing the equipment and services of independent contractors exempt from federal

14

III

For the reasons stated above, the judgment of the district court is reversed and the case is remanded to the district court with instructions to enter judgment in a manner consistent with this opinion.[8]

REVERSED

---

regulation." <u>Hartford Ins. Co. of the Southeast v. Occidental Fire & Cas. Co. of N.C.</u>, 908 F.2d 235, 238 (7th Cir. 1990).

[8]Because we conclude that the Republic policy does not provide coverage for Williams, we hold that PBX does not have a claim for bad faith against Republic.