**ASSOCIATION OF COMMUNITY OR-GANIZATIONS FOR REFORM NOW, et al., Plaintiffs,**

v.

**Candice MILLER, et al., Defendants.**

**Catherine LaPALM, et al., Plaintiffs,**

v.

**John ENGLER, et al., Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**STATE OF MICHIGAN, et al., Defendants.**

Nos. 4:95–cv–45, 1:95–cv–184 and 1:95–CV–386.

United States District Court, W.D. Michigan, Southern Division.

Jan. 17, 1996.

Stephen R. Bachmann, Stephen R. Bachmann Law Office, Edwardsburg, MI, Elliot M. Mincberg, Lawrence S. Ottinger, People For The American Way, Washington, DC, for plaintiffs in No. 4:95–cv–45.

Gary P. Gordon, Asst. Atty. General, Frank J. Kelley, Attorney General, Public Employment & Elections Division, Lansing, MI, for defendants.

Michael J. Guzman, Latham & Watkins, Washington, DC, Thomas F. Koernke, Boyden, Waddell, Timmons & Dilley, Grand Rapids, MI, David A. Price, Washington Legal Foundation, Washington, DC, for amici curiae.

Spencer C. Livingston, New Orleans, LA, for intervenor.

H. Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, MI, Paul J. Denenfeld, Legal Director, Detroit, MI, Samuel L. Walters, Lawyers Committee for Civil Rights Under Law, Washington, DC, for plaintiffs in No. 1:95–cv–184.

Michael Hayes Dettmer, U.S. Attorney, U.S. Attorney's Office, Grand Rapids, MI, Deval L. Patrick, Elizabeth Johnson, T. Christian Herren, U.S. Department of Justice, Civil Rights Division, Washington, DC, for plaintiff in No. 1:95–cv–386.

## *OPINION*

HILLMAN, Senior District Judge.

In an Opinion and Order filed December 13, 1995, the court concluded that the National Voter Registration Act of 1993 ("NVRA") was constitutional and was binding on defendants. At that time, the court ordered defendants to comply with the NVRA fully, and to file and serve within 10 days a proposed implementation plan.

On December 22, 1995, defendants filed a plan which included implementation of the NVRA in designated public assistance and disability offices under Section 7 of the NVRA. While stating that implementation of an agency-registration program would simply require copying and distributing existing application forms and instructions to the appropriate offices, and training of agency staff, defendants nevertheless claimed that it would take six months to implement fully the NVRA, including providing voter registration at the Department of Social Services agencies.

On January 12, 1996, Magistrate Judge Scoville held a status conference and hearing with regard to defendants' plan. I have now had an opportunity to read the transcript of that hearing and to review the briefs and other papers filed by the parties.

At this hearing, plaintiffs stipulated that they would not object to temporary use of defendants' current agency and mail-in registration forms. Defendants stipulated that the mail-in voter registration form would not be used for agency registration. Defendants further stipulated that city, township, and county clerks offices would be designated as additional registration sites pursuant to Section 7. Defendants further agreed to clarify the number of agency offices covered by the plan. The parties agreed to a briefing schedule on two issues not included in defendants' implementation plan, remediation and reporting. However, the parties were unable to agree on the amount of time necessary to implement agency registration as required by Section 7.

No dispute exists that defendants have not complied fully with Section 7. NVRA was never fully implemented because on January 10, 1995, Governor Engler issued Executive Order 1995–1, ordering that agency registration not begin until federal funds were made available to fully fund the program. However, evidence exists that defendants were preparing to comply fully with this section by January 1, 1995, the effective date of the NVRA. For example, the Secretary of State has already prepared camera-ready copies of agency voter registration forms and distributed these copies to the appropriate agencies. The Secretary of State also prepared a thorough implementation guide for agency personnel conducting registration.

■ At oral argument, defendants' counsel represented that the Secretary of State is now in full compliance with regard to its responsibilities under the implementation plan. Despite these representations, the Michigan Department of Social Services ("MDSS"), the Michigan Department of Public Health ("MDPH"), the Michigan Jobs Commission ("MJC"), and the Michigan Department of Mental Health ("MDMH") now contend that their full compliance with Section 7 will require up to an additional six months. MJC and MDMH cite the need for registration forms and implementation guides. As noted above, these items are already available from the Secretary of State. MDPH asks to delay implementation until after its annual conference on April 17, 1996, because it proposes to train all its local clinic staff at the conference.

■ The State of Michigan has been in violation of federal law for almost 13 months.

Further delay in the guise of convenience and/or efficiency is unwarranted. MDSS contends it must produce an instructional video tape to train agency personnel. However, MDSS has produced no evidence demonstrating that the implementation guide provided by the Secretary of State is inadequate for training purposes. Further, MDSS has produced no evidence that prior to the court's December 13, 1995, ruling such an instructional video tape was ever deemed necessary to supplement the Secretary of State's implementation guide. The lack of an instructional video tape therefore should not delay the MDSS from beginning to register voters. MDSS is free to train its employees more fully after basic implementation is accomplished.

All defendants further contend that agency personnel are too busy to begin registering voters sooner. At oral argument, counsel for defendants speculated that potential registrants receiving agency services would rather have their benefits than the right to vote. To allege that these two totally separate functions are somehow mutually exclusive is ridiculous and insulting to potential Michigan registrants.

The court observes that in two other NVRA cases, states have been ordered to comply fully in 30 and 45 days. *See Association of Community Orgs for Reform Now v. Ridge,* No. 94–CV–7671 (E.D.Pa. May 4, 1995); *Wilson v. United States of America,* No. C 95–20042 JW (N.D.Cal. May 4, 1995). At oral argument, plaintiffs asserted that in these cases, Pennsylvania and California were further out of compliance with the NVRA than Michigan is currently. Defendants did not contest this assertion.

All defendants here have known since December 13, 1995, that they would have to comply with the NVRA. Moreover, all defendants are fully aware that the registration deadline for the March 19, 1996, presidential primary is February 29, 1996. To insure that registration services are available for at least three weeks prior to the next federal election, defendants are ORDERED to comply with Section 7 in accordance with the January 12, 1996, stipulation of the parties, no later than FEBRUARY 1, 1996. A copy of Section 7 is attached to this opinion.

As defendants' implementation plan itself states, the necessary tasks for implementation of the NVRA in Section 7 agencies are straightforward and can be achieved very quickly: (1) make copies of the existing application form and instructions, and distribute to all designated offices; (2) assign managers in each office to be responsible for NVRA implementation; and (3) train the directors (and their designees) at each registration office in the simple procedures their employees must follow in providing registration to eligible citizens. With respect to training, the registration procedures required by the NVRA also are straightforward and not complicated. The designated agencies must do three things: (1) offer the opportunity to register or change address to eligible citizens; (2) offer assistance to citizens in completing the simple application form to register or change address; and (3) collect and transmit the completed form to the appropriate registrar's office. Defendants are further directed to keep records of how many individuals are offered registration, how many register, how many change address, and how many decline to register.

The court shall retain jurisdiction over this matter to resolve any NVRA disputes as they may occur.

The following issues remain pending: (1) whether certain requested information on the registration forms should be labeled "optional;" (2) whether other agencies should be designated as registration sites; (3) the number of MDSS offices at which registration is to be made available; (4) remedial steps necessary in light of defendants' almost 13 months of noncompliance with the NVRA; and (5) reporting requirements necessary to gauge defendants' compliance. A supplemental order will follow after such time as these and any other remaining issues in the case have been briefed. A status conference is set for Wednesday, January 31, 1996, at 9:30 A.M.

ATTACHMENT

### Section 7. Voter registration agencies

### (a) Designation

(1) Each State shall designate agencies for the registration of voters in elections for Federal office.

(2) Each State shall designate as voter registration agencies-

(A) all offices in the State that provide public assistance; and

(B) all offices in the State that provide State-funded programs primarily engaged in providing services to persons with disabilities.

(3)(A) In addition to voter registration agencies designated under paragraph (2), each State shall designate other offices within the State as voter registration agencies.

(B) Voter registration agencies designated under subparagraph (A) may include—

(i) State or local government offices such as public libraries, public schools, offices of city and county clerks (including marriage license bureaus), fishing and hunting license bureaus, government revenue offices, unemployment compensation offices, and offices not described in paragraph 2(B) that provide services to persons with disabilities; and

(ii) Federal and nongovernmental offices, with the agreement of such offices.

(4)(A) At each voter registration agency, the following services shall be made available:

(i) Distribution of mail voter registration application forms in accordance with paragraph (6).

(ii) Assistance to applicants in completing voter registration application forms, unless the applicant refuses such assistance.

(iii) Acceptance of completed voter registration application forms for transmittal to the appropriate State election official.

(B) If a voter registration agency designated under paragraph (2)(B) provides services to a person with a disability at the person's home, the agency shall provide the services described in subparagraph (A) at the person's home.

(5) A person who provides services described in paragraph (4) shall not—

(A) seek to influence an applicant's political preference or party registration;

(B) display any such political preference or party allegiance;

(C) make any statement to an applicant or take any action the purpose or effect of which is to discourage the applicant from registering to vote; or

(D) make any statement to an applicant or take any action the purpose or effect of which is to lead the applicant to believe that a decision to register or not to register has any bearing on the availability of services or benefits.

(6) A voter registration agency that is an office that provides service or assistance in addition to conducting voter registration shall—

(A) distribute with each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance—

(i) the mail voter registration application form described in section 1973gg–7(a)(2) of this title, including a statement that—

(I) specifies each eligibility requirement (including citizenship);

(II) contains an attestation that the applicant meets each such requirement; and

(III) requires the signature of the applicant, under penalty of perjury; or

(ii) the office's own form if it is equivalent to the form described in section 1973gg–7(a)(2) of this title,

unless the applicant, in writing, declines to register to vote;

(B) provide a form that includes—

(i) the question, "If you are not registered to vote where you live now, would you like to apply to register to vote here today?";

(ii) if the agency provides public assistance, the statement, "Applying to register to declining to register to vote will not affect the amount of assistance that you will be provided by this agency.";

(iii) boxes for the applicant to check to indicate whether the applicant would like to register or declines to register to vote (failure to check either box being deemed to constitute a declination to register for purposes of subparagraph (C)), together with the statement (in close proximity to the boxes and in prominent type), "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME.";

(iv) the statement, "If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private."; and

(v) the statement, "If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with _____," the blank being filled by the name, address, and telephone number of the appropriate official to whom such a complaint should be addressed; and

(C) provide to each applicant who does not decline to register to vote the same degree of assistance with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance.

(7) No information relating to a declination to register to vote in connection with an application made at an office described in paragraph (6) may be used for any purpose other than voter registration.